IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GORDY, # 257498, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:14cv162-WKW |
| | ) | [WO] |
| CARTER F. DAVENPORT, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.   INTRODUCTION

This case is before the court on a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by state inmate Michael Gordy ("Gordy") on February 28, 2014. Doc. 1.[1]  Gordy, through counsel, presents claims challenging the constitutionality of his 2008 convictions in the Circuit Court of Russell County for the offenses of attempted murder, first-degree robbery (two counts), and second-degree assault.  The respondents contend that Gordy's petition is time-barred by the one-year federal limitation period applicable to § 2254 petitions. *See* 28 U.S.C. § 2244(d).  After reviewing the pleadings, evidentiary materials, and applicable law, the court concludes that no evidentiary hearing is required and that Gordy's petition should be denied as untimely.

## II.   DISCUSSION

*AEDPA's Limitation Period*

Title 28, United States Code, Section 2244(d) of the Antiterrorism and Effective Death

---

[1] References to document numbers ("Doc.") are those assigned by the Clerk of Court in this action.  Page references are to those assigned by CM/ECF.

Penalty Act of 1996 ("AEDPA") provides the statute of limitations for federal habeas petitions

and states:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

On January 11, 2008, a Russell County jury found Gordy guilty of attempted murder, in

violation of Alabama Code §§ 13A-4-2 & 13A-6-2; two counts of first-degree robbery, in

violation of Alabama Code § 13A-8-41; and second-degree assault, in violation of Alabama

Code § 13A-6-21. Doc. 11-5 at 75-77.  On February 20, 2008, the trial court sentenced Gordy as

a habitual offender to life in prison for the attempted-murder conviction, life in prison for each

robbery conviction, and 180 months in prison for the assault conviction. Doc. 11-5 at 80-87.  The

trial court ordered the sentences for the robbery and assault convictions to be served concurrently but consecutive to the sentence for attempted murder. Doc. 11-5 at 80-87.

Gordy appealed, and the Alabama Court of Criminal Appeals affirmed his convictions and sentence in a memorandum opinion issued on October 2, 2009. Doc. 11-9.  Gordy did not apply for rehearing in the Alabama Court of Criminal Appeals.  On October 21, 2009, the Alabama Court of Criminal Appeals entered a certificate of judgment in his case. Doc. 11-10.  On November 4, 2009, Gordy, through counsel, filed a petition for writ of certiorari with the Alabama Supreme Court, Doc. 11-11, and on November 6, 2009, also through counsel, he filed a motion with the Alabama Court of Criminal Appeals to recall its certificate of judgment, Doc. 11-2.  On November 9, 2009, the Alabama Court of Criminal Appeals denied Gordy's motion to recall the certificate of judgment. Doc. 11-13.  On November 13, 2009, the Alabama Supreme Court ordered that Gordy's petition for writ of certiorari be stricken because he failed to apply for rehearing in the Alabama Court of Criminal Appeals. Doc. 11-14.  On February 8, 2010, Gordy filed a *pro se* petition for writ of certiorari with the United States Supreme Court. Doc. 11-15.  In March 2010, that petition was returned to Gordy by the Clerk of the United States Supreme Court as improperly filed. Doc. 11-16.

On October 29, 2010, Gordy filed a *pro se* petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure challenging his convictions and sentence. *See* Doc. 11-17 at 18-66.[2]  Through retained counsel, he amended the Rule 32 petition twice

---

[2] Although the records from the trial court reflect that Gordy's Rule 32 petition was docketed as filed on December 13, 2010, *see, e.g.,* Doc. 11-17 at 2 & 18, Gordy represented on the petition that it was signed and mailed on October 29, 2010. *See, e.g.*, Doc. 11-17 at 56 & 64.  Elsewhere, however, he maintained that his mother mailed the petition to the circuit court, by certified mail, on about November 4, 2010. *See* Doc. 11-20 at 88-89.  For purposes of this Recommendation,

(continued…)

thereafter.  On August 30, 2011, the trial court denied Gordy's Rule 32 petition by written order. Doc. 11-20 at 122-23.  Gordy appealed, and on September 14, 2012, the Alabama Court of Criminal Appeals affirmed the trial court's judgment. *See* Docs. 11-21 to 11-24.  On September 27, 2012, Gordy applied for rehearing. Doc. 11-25.  The application for rehearing was overruled by the Alabama Court of Criminal Appeals on December 21, 2012. Doc. 11-26.  On January 2, 2013, Gordy filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on April 14, 2013, entering a certificate of judgment the same day. Doc. 11-27 to 11-29.

Because Gordy filed no application for rehearing in the Alabama Court of Criminal Appeals on direct review, he was precluded from seeking certiorari review in the Alabama Supreme Court and, as a further consequence, in the United States Supreme Court.[3]  By operation of law, then, Gordy's conviction became final on October 21, 2009 when the Alabama Court of Criminal Appeals entered a certificate of judgment in the direct-appeal proceedings. *See Brown v. Hooks*, 176 Fed. App'x 949, 951 (11th Cir. 2006); Ala.R.App.P. 41(a); *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002).  Under 28 U.S.C. § 2244(d)(1)(A), AEDPA's

---

the court will consider October 29, 2010, as the date the Rule 32 petition was filed.

[3] As noted above, although Gordy filed a petition for writ of certiorari with the Alabama Supreme Court, that court ordered that the petition be stricken because he failed to file an application for rehearing in the Alabama Court of Criminal Appeals. *See* Doc. 11-14.  The filing of an application for rehearing is a prerequisite for certiorari review by the Alabama Supreme Court. Ala.R.App.P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court.").  Because Gordy's petition for writ of certiorari with the Alabama Supreme Court was stricken, he was not entitled to obtain certiorari review by the United States Supreme Court. *See Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000); Rule 13.1, Rules of the United States Supreme Court (stating that a petition for writ of certiorari to the United States Supreme Court may only be filed to review a judgment or order entered by a state court of last resort).

one-year limitation period for Gordy to file a petition for writ of habeas corpus under 28 U.S.C. § 2254 began to run on October 21, 2009.  Absent statutory or equitable tolling, that limitation period expired on October 21, 2010, rendering the instant petition untimely.

<em>Statutory Tolling</em>

Title 28, United States Code, Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."  As indicated above, Gordy filed a Rule 32 petition in the trial court on October 29, 2010.  However, that filing had no tolling effect under § 2244(d)(2), because AEDPA's one-year limitation period expired eight days earlier, on October 21, 2010. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (noting that, where the state court application for post-conviction relief is filed after the one-year federal statute of limitations has expired, it does not toll the statute because no time remains to be tolled).[4]  Thus, statutory tolling cannot save Gordy's petition.

<em>Equitable Tolling</em>

Even where statutory tolling is inapplicable, the limitation period in federal habeas proceedings may be equitably tolled on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his

---

[4] The tolling provisions of 28 U.S.C. § 2244(d)(1)(B)-(D) do not provide safe harbor for Gordy such that AEDPA's limitation period commenced on some date other than October 29, 2009. There is no evidence that any unconstitutional or illegal State action impeded Gordy from filing a timely § 2254 petition. *See* 28 U.S.C. § 2244(d)(1)(B).  Gordy presents no claim that rests on an alleged "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).  Finally, he submits no grounds for relief for which the factual predicate could not have been discovered at an earlier time "through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

5

control and unavoidable with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). As the Supreme Court has reaffirmed, a petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is an extraordinary remedy applied only sparingly. *Logreira v. Sec'y Dept. of Corr.*, 161 Fed. App'x 902, 903 (11th Cir. 2006). The burden of establishing entitlement to equitable tolling rests with the petitioner. *Hollinger v. Sec'y Dep't of Corrs.*, 334 Fed. App'x 302, 306 (11th Cir. 2009).

Gordy argues he is entitled to equitable tolling because his attorney on direct appeal, Susan G. James, "abandoned" him after the Alabama Court of Criminal Appeals entered its memorandum opinion on October 2, 2009 affirming his convictions and sentence. Doc. 20 at 11. According to Gordy, he was unable to contact James regarding the "status of his direct appeal" until approximately eleven months after October 2, 2009, by which time, he seems to say, the statute of limitations had run on filing a timely Rule 32 petition in the trial court. Doc. 20 at 10-12. Gordy then suggests that his inability to file a timely Rule 32 petition in state court prevented him from filing a timely § 2254 habeas petition in federal court. Doc. 20 at 10-12. Gordy, who was at the time incarcerated, alleges none of his own efforts to contact James during that period, but he does submit an affidavit from his mother, who states she phoned James's office "several times" without receiving a return phone call around this time. Doc. 20 at 23. Further, Gordy's mother states that when she finally spoke to James, she "said she would call me with an appointment and she never did." Doc. 20 at 23. The dates on which these events occurred are not specified in the affidavit.

On this record, Gordy has not met his burden of establishing that some extraordinary circumstance prevented him from filing a timely § 2254 petition. *Holland*, 560 U.S. at 649. First, the Alabama Court of Criminal Appeals entered its certificate of judgment in the direct-appeal stage of the proceedings on October 21, 2009.  Gordy states he was unable to contact James regarding the status of his direct appeal until approximately eleven months after the Alabama Court of Criminal Appeals' October 2, 2009 entry of its memorandum opinion affirming his convictions and sentence.[5] *See* Doc. 20 at 10-12.  Counting eleven months from October 2, 2009 (or even counting eleven months from October 21, 2009), the one-year limitation period for Gordy to file a timely Rule 32 petition had *not* expired when he says he learned of the status of his appeal. *See* Ala.R.Crim.P. 32.2(c).[6]  Neither had AEDPA's one-year limitation period. *See* 28 U.S.C. § 2244(d).

---

[5] Gordy is exceptionally vague about the exact date he allegedly learned his appeal was unsuccessful or, for that matter, exactly how he learned this information.  As noted, he claims in his pleadings that approximately eleven months passed—from either October 2, 2009 or October 21, 2009—before he learned the status of his appeal.  In an affidavit submitted with his petition, he avers that "I learned in October 2010 about the denial of the Alabama Supreme Court…." Doc. 1 at 39.  Gordy's mother states in her affidavit, "My son nor I were aware that his Appeal had been denied until the middle of October, 2010." Doc. 20 at 23.  Even if the court accepts "the middle of October, 2010" as the point at which Gordy learned the ultimate fate of his appeal, Gordy had until October 21, 2010, to file a timely state or federal petition for collateral relief.  At the very least, Gordy could have filed a "placeholder" petition tolling the limitation period, which he then could have amended to set out detailed claims.

[6] Rule 32.2(c) of the Alabama Rules of Criminal Procedure provides, in pertinent part: "Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala.R.App.P." Ala.R.Crim.P. 32.2(c).

Moreover, Gordy is vague about what aspect of his appeal he was ignorant of when unable to contact James. He does not allege that he received untimely notice of the Alabama Court of Criminal Appeals' memorandum opinion affirming his convictions and sentence. Nor does he specify when he learned that James failed to file an application for rehearing of the appellate court's decision[7] or when he learned that the appellate court had entered its certificate of judgment. Instead, he alludes only to James's failure to contact him "regarding the problem with his direct appeal" after the Alabama Court of Criminal Appeals issued its memorandum opinion. Doc. 20 at 10. It appears from the record that Gordy knew as early as November 2009 that James filed no application for rehearing. *See, e.g.*, Doc. 11-12. Moreover, Gordy filed a *pro se* petition for writ of certiorari with the United States Supreme Court in February 2010. Gordy's allegations in that *pro se* petition indicate he knew when he submitted it that (1) James had failed to file an application for rehearing; (2) the Alabama Court of Criminal Appeals had entered a certificate of judgment in the direct-appeal stage of his proceedings; and (3) the Alabama Court of Criminal Appeals had denied his motion to recall the certificate of judgment. *See* Doc. 11-15 at 10-16. Thus Gordy knew there was a "problem with his direct appeal" long before expiration of the limitation period for him to file a Rule 32 petition in state court or, if he chose, a § 2254 petition in federal court. And even if Gordy now claims he did not definitively learn until eleven months after the Alabama Court of Criminal Appeals issued its memorandum

---

[7] It is undisputed on the record before the court that Gordy wanted James to file an application for rehearing but that James inadvertently failed to do so. The Alabama courts have held that an appellant is not entitled to a rehearing as a matter of right, and therefore an attorney's failure to file an application for rehearing does not, in and of itself, constitute ineffective assistance of counsel. *See, e.g., Elliott v. State*, 768 So. 2d 422, 423-24 (Ala. Crim. App. 1999); *State v. Carruth*, 21 So. 3d 764 (Ala. Crim. App. 2008).

opinion that the state courts considered his direct appeal to be dead in the water,[8] there was at that point, as noted above, still time remaining on the clock for him to file a timely state or federal petition.

Ultimately, Gordy fails to show that the alleged lack of communication from James actually prevented him from filing a timely Rule 32 petition or § 2254 petition.  If, as Gordy contends, James walked away from her direct-appeal obligations to him after the Alabama Court of Criminal Appeals issued its memorandum opinion, the alleged abandonment did not block Gordy from pursuing collateral remedies before it was too late.  Further, in his allegations about James, Gordy has not demonstrated the sort of serious attorney misconduct that rises to the level of an extraordinary circumstance justifying equitable tolling. *See Holland*, 560 U.S. at 649. Although an attorney's intentional deceit could warrant equitable tolling if a party shows reliance on the deceptive misrepresentations, mere attorney negligence does not warrant equitable relief. *Spears v. Warden*, 605 Fed. App'x 900, 903 (11th Cir. 2015).  While Gordy alleges that his mother sought several times to contact James about the status of his appeal—to no avail—during the eleven months after his convictions and sentence were affirmed, nothing in the record indicates that James actively misled Gordy about the status of his case so that he was lulled into believing he need not act expeditiously to pursue his rights.

---

[8] Parsing Gordy's vague allegations, he most clearly articulates that James failed to notify him of the decision by the Alabama Supreme Court on November 13, 2009 striking his petition for writ of certiorari because he failed to apply for rehearing in the Alabama Court of Criminal Appeals. However, Gordy never states that he sought to ask James specifically about the status of his petition for certiorari during the period in question, or that he or his mother ever attempted to contact the Alabama Supreme Court during that time to ascertain the status of his petition for certiorari.

Finally, Gordy completely fails to show that he exercised the reasonable diligence required to merit equitable tolling. "Equitable tolling is not intended as a device to rescue those who inexcusably sleep upon their rights." *United States v. Ramos-Maritinez*, 638 F.3d 315, 323 (1st Cir. 2011). Gordy refers to his mother's unsuccessful attempts to contact James; however, he does not show he acted diligently in the face of circumstances that should have prompted him to pursue his rights. Although Gordy knew that the Alabama Court of Criminal Appeals had issued the memorandum opinion affirming his convictions and sentence and also knew that James had not applied for rehearing of that decision, there is no evidence (and no allegation by Gordy) that, during the relevant period while the statute of limitations ran, either Gordy or someone acting on his behalf ever sought to contact the Alabama Court of Criminal Appeals or the Alabama Supreme Court to determine the status of his case. Even assuming—and perhaps *especially* assuming—the veracity of Gordy's allegations about the lack of communication from James, a reasonable person in Gordy's position would have considered it prudent to inquire of the state courts about his case, particularly the status of the petition for writ of certiorari filed in the Alabama Supreme Court. Gordy's failure to do so constitutes a lack of reasonable diligence that forecloses his claim to entitlement to equitable tolling. Here, AEDPA's one-year limitation period for filing a § 2254 petition expired on October 21, 2010. Because Gordy did not file his § 2254 petition until February 28, 2014, his petition is untimely.

*Actual Innocence*

Demonstrated actual innocence may trump a time-bar in habeas proceedings and act as a gateway through which a petitioner can pass to have the claims in his § 2254 petition reviewed. *See Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1011 (11th Cir. 2012); *Wyzykowski v. Dept. of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000). In *Schlup v. Delo*,

10

513 U.S. 298 (1995), the United States Supreme Court held that habeas petitioners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327.

"[T]he Schlup standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." *Id*. at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). As the Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Gordy arguably asserts a claim of actual innocence through an affidavit submitted by Mary Crews, one of the victims of the home-invasion robbery for which Gordy was convicted. *See* Doc. 1 at 34-35, 40; Doc. 20 at 21-23; Doc. 29 at 11-13. In her affidavit, Crews asserts, with little elaboration: "I want to reiterate once again, Michael Gordy is not one of the individuals who robbed me . . . . For the past 7 years it has bothered me that Michael Gordy was accused and

11

ultimately convicted of robbing me when I'm positive he is *not* one of the robbers . . . ." Doc. 1 at 40.

Crews's affidavit does not carry Gordy's heavy burden of demonstrating that it is more likely than not that no reasonable juror would have convicted him in light of the alleged new evidence. *See Schlup*, 513 U.S. at 327.  In her trial testimony about the robbery, Crews testified that three armed men charged into the home where she lived with her grandmother and, after striking her in the head with the butt of a gun, took a safe containing 25 $2 bills and jewelry and other items, including her purse and cell phone.  Two of the men had their faces covered, while a third, identified as Jerod Rogers, did not cover his face.  Crews later picked Rogers from a lineup of 24 men as one the robbers.  The State presented substantial evidence that Gordy was one of the two robbers with his face covered.  In her affidavit, Crews does not explain how she is "positive" Gordy was not one of the robbers, or why she did not make such a claim until seven years after the robbery.

If Crews had testified at trial consistently with her affidavit, the jury would have weighed and assessed the credibility of such testimony against the substantial evidence of Gordy's guilt. The State's evidence included the testimony of Crews's grandmother, who was present during the robbery and testified consistently with Crews's trial testimony about the incident and the physical descriptions of the gunmen, and the testimony of Jerod Rogers, who cooperated with the State after his arrest and identified Gordy as a co-participant in the crime.  The State's evidence also showed that when police apprehended Gordy, they found Crews's cell phone in his vehicle and nine $2 bills in his wallet.  Crews's conclusory statement that Gordy was not one of the robbers is a thin reed upon which to hang a claim of actual innocence in light of Crews's trial

12

testimony that two of the three gunmen had their faces covered and the quantum of evidence indicating Gordy's guilt.

Gordy has failed to convince the court that it is more likely than not that no reasonable juror would have found him guilty in light of the alleged new evidence. *Schlup*, 513 U.S. at 327. As Justice O'Connor emphasized in *Schlup*, the Supreme Court strove to "ensure that the actual innocence exception remains only a safety valve for the extraordinary case." *Schlup*, 513 U.S. at 333 (O'Connor, J., concurring) (internal quotation marks omitted).  Gordy's is not such a case. Therefore, he is not entitled to the actual-innocence exception to the habeas statute's time-bar as articulated in *Schlup*.[9]

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case DISMISSED with prejudice, as the petition was filed after expiration of the one-year limitation period in 28 U.S.C. § 2244(d).

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before March 10, 2016.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

---

[9] Even if the matters in Crews's affidavit are seen as asserting a new, substantive claim, such a claim is untimely because Gordy does not show that the factual predicate of the claim could not have been discovered well before expiration of the limitation period through the exercise of due diligence.  Moreover, no such claim was ever presented in the state courts.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson,* 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of February, 2016.


   /s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE